UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RYAN W.,

                                                                                                               <u>DECISION AND ORDER</u>

                             Plaintiff,

                                                                                                              20-CV-1557L

                v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                             Defendant.
_____

        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

        On December 27, 2016, plaintiff, then thirty-one old, filed applications for a period of disability and disability insurance benefits, and for Supplemental Security Income, alleging disability beginning January 19, 2016. (Administrative Transcript, Dkt. #12 at 163). His applications were initially denied. Plaintiff requested a hearing, which was held on April 12, 2019 via videoconference before Administrative Law Judge ("ALJ") William M. Weir. The ALJ issued an unfavorable decision on May 30, 2019. (Dkt. #12 at 163-81). That decision became the final decision of the Commissioner when the Appeals Council denied review on August 24, 2020. (Dkt. #12 at 1-4). Plaintiff now appeals.

        The plaintiff has moved for remand of the matter for further proceedings (Dkt. #17), and the Commissioner has cross moved (Dkt. #19) for judgment on the pleadings, pursuant to Fed. R.

Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's health records, reflecting treatment for a history of degenerative joint disease of the left knee, status post surgery, autism spectrum disorder, left foot drop, and obesity, which the ALJ determined comprised severe impairments not meeting or equaling a listed impairment. (Dkt. #12 at 165).

Applying the special technique, the ALJ found that plaintiff has a mild limitation in understanding, remembering and applying information, a moderate limitation in social interaction, a mild limitation in concentration, persistence and pace, and a mild limitation in adapting or managing himself. (Dkt. #12 at 166-67).

Upon review of the record, the ALJ determined that plaintiff retains the residual functional capacity ("RFC") to perform sedentary work, except that he can stand or walk no more than one hour in an eight-hour workday. He requires the ability to use a cane, but can occasionally carry ten pounds in the opposite hand. He can have no more than occasional contact with coworkers and supervisors, and no contact with the public. His general task or work setting should not change during the day. (Dkt. #12 at 168).

When asked at the hearing whether a person with this RFC could perform plaintiff's past relevant work as a certified nursing assistant, vocational expert Deanna Olah testified that they could not, as that position required a greater-than-sedentary exertional capacity. When asked if there were other positions a person with this RFC could perform,[1] the vocational expert identified the representative sedentary positions of final assembler and table worker. (Dkt. #12 at 179-80). The ALJ accordingly found plaintiff "not disabled."

I. The ALJ's Step Two Finding

Plaintiff argues that the ALJ erred at step two in declining to consider whether plaintiff's complex regional pain syndrome "CRPS" was a severe impairment, and in failing to assess the limitations on plaintiff's RFC that CRPS imposed.

Notwithstanding the ordinary meaning of the word "severe," the second step's evidentiary requirement is *de minimis*, and is intended only to screen out the truly weakest of cases. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Thus, a step two finding of "not severe" is only appropriate where "the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect'" on an individual's ability to perform basic work activities. *Rosario v. Apfel*, 1999 U.S. Dist. LEXIS 5621 at *14 (E.D.N.Y. 1999) (quoting *Bowen v. Yuckert*,

---

[1] In point of fact, the RFC described by the ALJ at the hearing does not precisely match the RFC described in the ALJ's decision – an issue which would otherwise merit remand on its own. With respect to the use of a cane and carrying of items with the opposite hand, the ALJ asked the vocational expert to identify jobs that could be performed by an individual who was able to "carry up to 10 pounds in the non-cane hand," with no limitation as to frequency. (Dkt. #12 at 225). However, the ALJ's final RFC determination was more restrictive, and limited plaintiff to no more than "*occasional*[] carry[ing of] 10 pounds in the [non-cane] hand." (Dkt. #12 at 168)(emphasis added).

Because the vocational expert was provided with a more expansive RFC than the ALJ later determined, remand would ordinarily be required to address whether an individual limited to "occasional" carrying of items with the non-cane hand could still perform the positions the vocational expert identified, and upon which the ALJ relied. *See Owens v. Astrue*, 2009 U.S. Dist. LEXIS 102277 at *27 (N.D.N.Y. 2009)("[i]f a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability")(citing *Melligan v. Chater*, 1996 U.S. Dist. LEXIS 22146 (W.D.N.Y. 1996)). However, because I find, *infra*, that remand is required to address errors at step two and to render an entirely new decision in this matter, the ALJ's errors at subsequent steps are moot for purposes of the instant appeal.

482 U.S. 137, 154 n.12 (1987)). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," and they include physical, postural and sensory functions, as well as mental functions. 20 C.F.R. §§ 404.1521(b), 416.921(b).

Here, the ALJ did not mention or discuss plaintiff's CRPS diagnosis at step two, and does not appear to have considered the effect of any associated symptoms in his analysis of the limitations caused by plaintiff's severe and non-severe impairments.

CRPS is a central nervous system disorder, defined as "chronic neuropathic pain that follows soft-tissue or bone injury or nerve injury and lasts longer and is more severe than expected for the original tissue damage." Merck Manual Professional Version, https://www.merckmanuals.com/professional/neurologic-disorders/pain/complex-regional-pain-syndrome-crps (last visited January 6, 2022). Symptoms can include pain, motor abnormalities (weakness, tremors, spasm, contracted or twisted muscles in an extremity), edema, and skin and hair changes. *Id*. CRPS typically occurs after an injury to a hand, foot, or lower limb, and often immediately follows the immobilization of a limb for surgery to treat the initial injury. It can also be caused by overt damage to a peripheral nerve. *Id*. CRPS may progress or remain stable for periods of time, and can, in some cases, spread to other parts of the body. *Id*. Diagnosis is made through assessment of symptoms, in combination with ruling out alternative explanations for a patient's symptoms.

According to the record, in February 2019, after plaintiff continued to complain of left lower extremity pain and a spastic, unsteady gait after knee surgery in May 2017, plaintiff was referred by treating nurse practitioner Carrie Fox for left foot and ankle x-rays, and a bone scan, to assess him for possible CRPS. After the imaging studies and evaluation of symptoms

demonstrated no other root cause for plaintiff's subjective complaints or objective examination findings, Ms. Fox diagnosed plaintiff with CRPS. (Dkt. #12 at 1388-90, 1393-94).

While other treating and examining physicians did not specifically reference CRPS, their diagnoses consistently pointed to a central nervous system disorder. Plaintiff's treating neurologist, Dr. Marc Frost, noted that plaintiff's abnormal gait symptoms were "functional" – that is, that they lacked any identifiable physical cause. (Dkt. #12 at 1220-21, 1241, 1262, 1401). Physiatrist Dr. Leonard Kaplan attributed plaintiff's left leg spastic behavior to nerve damage from his prior knee surgery. (Dkt. #12 at 1269). Treating orthopedist Dr. William Wind initially diagnosed plaintiff's gait abnormality and spasms as the result of either lumbar disc herniations, or a "central nervous system disorder," but ultimately concluded that plaintiff's symptoms were the result of the latter, stating that a "neurologic condition" was affecting plaintiff's left leg. (Dkt. #12 at 1233-34, 1302). Examining physician Dr. Gerald Coniglio identified plaintiff's left foot drop with equinovarus (clubfoot) as "secondary to peroneal nerve injury," which Dr. Coniglio theorized was a direct result of surgical trauma to the peroneal nerve at the time of plaintiff's lateral debridement surgery on his left knee in 2017, since "the peroneal nerve is precisely in that area [where the debridement was performed]." (Dkt. #12 at 1365, 1368).

In light of the evidence of record that plaintiff had been diagnosed with CRPS, and had consistently complained of symptoms consistent with the disorder, including muscle spasms, swelling, weakness, cramping and clubbing of the left foot, drop foot, gait instability, tremors, and later, complaints of neuropathic symptoms spreading to his upper extremities, the ALJ erred in failing to assess whether plaintiff's CRPS was a severe impairment. Further, regardless of whether plaintiff's CRPS was a severe impairment, the ALJ was obligated to consider whether plaintiff's

CRPS symptoms affected his ability to perform the postural and/or exertional requirements of work during the relevant period in a manner that was not already accounted-for in plaintiff's RFC.

Although the failure to find an impairment to be severe at step two may be harmless where the ALJ later considers the symptoms of that impairment in subsequent steps of his analysis, here the ALJ did not address or analyze plaintiff's CRPS at any point in his decision, and it is unclear to what extent the ALJ's consideration of associated conditions or symptoms (such as plaintiff's degenerative joint disease of the left knee, or drop foot), might have accounted for some of his CRPS-related limitations.[2] *See Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013). Remand is therefore required.

Plaintiff also argues that the ALJ committed other errors in later steps of the analysis. Because the Court is ordering remand for a fresh determination beginning with step two and the rendering of an entirely new decision, these arguments are moot, and the Court declines to consider them.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #17) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #19) is denied, and the matter is remanded for further proceedings. On remand, the ALJ is directed

---

[2] Indeed, the ALJ rejected the opinion of examining physician Dr. Coniglio, which appears to have been the only medical opinion of record that assessed plaintiff's limitations in view of a "traumatic neurological disorder," and specifically a "peroneal nerve injury," causing back pain, weakness, atrophy, pain, and drop foot in the lower left extremity, along with ulnar neuropathy in the arms secondary to the use of crutches. (Dkt. #12 at 1362-81). Although the ALJ stated he gave Dr. Coniglio's opinion "some weight" because it was "consistent" with other evidence of record, the ALJ nonetheless rejected the bulk of the limitations Dr. Coniglio had opined, without explanation. These limitations included the ability to lift up to 8 pounds with either arm, ability to walk with crutches for 100 feet and for no more than 15 minutes, inability to climb, kneel, bend, crawl or squat, need for a sit/stand option, need for a padded chair permitting plaintiff to sit with knees and hips flexed at 90 degrees, inability to drive or use foot controls, and inability to reach overhead. (Dkt. #12 at 175).

to render a new decision reconsidering plaintiff's claim. That decision should include an assessment of whether plaintiff's CRPS was among his severe impairments, and whether it resulted in limitations in plaintiff's ability to perform work-related functions.

    IT IS SO ORDERED.

                                                    _____
                                                         DAVID G. LARIMER
                                                      United States District Judge

Dated:  Rochester, New York
         January 12, 2022.